**Dated: November 04, 2025**
**The following is ORDERED:**

_____
**Jennie D. Latta**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| In re<br>THEODORE E. HARRIS, JR., and<br>JO CAROL HARRIS,<br>    Debtors. | Case No. 22-22360-L<br>Chapter 7 |
| SCGV Dexter Ridge, LLC,<br>    Plaintiff,<br>v.<br>Theodore E. Harris, Jr., and<br>Jo Carol Harris,<br>    Defendants. | Adv. Proc. No. 25-00020<br>ECF Nos. 8 and 15 |

**DEFAULT JUDGMENT DENYING DISCHARGE**
**PURSUANT TO COUNT IV OF THE COMPLAINT**

_____

THIS PROCEEDING came before the Court on October 9, 2025, upon the motion of Plaintiff, SCGV Dexter Ridge, LLC ("SCGV"), for entry of default judgment against the Defendants, Theodore E. Harris, Jr., and Jo Carol Harris. Plaintiff alleges that the Defendants are

ineligible for discharge and the discharge of the debt owed to the Plaintiff should be denied as the result of the Defendants' fraud.

In support of its motion for entry of default judgment, SCGV relies upon the Declaration of Brian Matthew Glass, trustee in bankruptcy; the Declaration of Julie C. Bartholomew, attorney for the Plaintiffs; and the Defendants' bankruptcy petitions, schedules, and statements in Case Nos. 19-29206, 20-23623, and 22-22360. SCGV asserts that its debt should be excepted from discharge pursuant to section 523(a)(2)(A) of the Bankruptcy Code and that the Defendants' general discharge should be denied pursuant to sections 727(a)(2)(A) and (B), 727(a)(3), and 727(a)(4).

Defendant Theodore Harris appeared without counsel and was permitted to give testimony in opposition to the motion for entry of default judgment.

Having carefully reviewed the declarations, exhibits, and testimony, the Court makes the following findings of fact and conclusions of law.

## JURISDICTION, AUTHORITY, AND VENUE

Jurisdiction over an adversary proceeding arising under the Bankruptcy Code lies with the district court. 28 U.S.C. § 1334(b). Pursuant to authority granted to the district courts at 28 U.S.C. § 157(a), the district court for the Western District of Tennessee has referred to the bankruptcy judges of this district all cases arising under title 11 and all proceedings arising under title 11 or arising in or related to a case under title 11. *In re Jurisdiction and Proceedings Under the Bankruptcy Amendments Act of 1984*, Misc. No. 81-30 (W.D. Tenn. July 10, 1984). Determinations of the dischargeability of particular debts and objections to discharge arise under the Bankruptcy Code and thus are core proceedings. *See* 11 U.S.C §§ 523(a), 727(a), and 28 U.S.C. § 157(b)(2)(I) and (J). Venue of this adversary proceeding is proper to the Western District of Tennessee because this proceeding arises in a bankruptcy case pending in this district. *See*

28 U.S.C. § 1409(a).

## BACKGROUND FACTS

SCGV as landlord entered into a commercial lease with Teddy's, Inc., as tenant on July 17, 2017 (the "Lease"). The Lease was signed by Defendant Jo Carol Harris as "President of Teddy's, Inc." The first payment was due under the Lease on April 1, 2018. [Complaint, ECF No. 1, ¶¶ 6-7].

The lease payment for June 1, 2018, was not paid and additional payments were not paid until, in November 2019, the parties agreed that the tenant would voluntarily vacate the leased premises. [ECF No. 1, ¶¶ 8-9].

The Defendants filed their first Chapter 13 bankruptcy petition on November 19, 2019, case number 19-29206. The Defendants did not name SCGV as a creditor or identify the lease between SCGV and Teddy's in their bankruptcy schedules. The Defendants did not identify Teddy's as a business that Jo Carol Harris owned in their Statement of Financial Affairs. [Declaration of Julie C. Bartholomew, ECF No. 20, Ex. A].

Without notifying SCGV of their bankruptcy filing, the Defendants requested that SCGV agree that another tenant be substituted for Teddy's under the Lease. The proposed tenant was Cordova Catfish Place & More, LLC ("Cordova Catfish"). SCGV agreed, and the parties executed the First Amendment to the Lease on November 19, 2019, with Defendant Jo Carol Harris signing as the representative of Cordova Catfish. In addition, the Defendants provided SCGV personal guaranties of the performance of Cordova Catfish under the Lease. [ECF No. 1, ¶ 12].

On January 7, 2020, Defendant Jo Carol Harris assigned the Lease to a third party without the permission of SCGV. The third party took possession of the premises and operated a business there. The tenant paid rent to the Defendants, but the Defendants did not pay rent to SCGV.

Subletting the premises without the approval of SCGV was prohibited by the Lease. [ECF No. 1, ¶ 15].

On January 21, 2020, the Defendants' Chapter 13 case was dismissed for failure to provide required documents to the Chapter 13 trustee. [Case No. 19-29206, ECF No. 26].

On March 4, 2020, SCGV obtained a judgment for possession of the leased premises and for unpaid rent and other charges due under the Lease against Cordova Catfish in the Shelby County General Sessions Court. The defendant appealed the judgment to Shelby County Circuit Court. [ECF No. 1, ¶¶ 17-18].

While the appeal was pending, the Defendants filed a second Chapter 13 petition on July 20, 2020, case number 20-23623. SCGV was not given notice of the filing of this petition nor was it identified as a creditor or party to an unexpired lease in the Defendants' bankruptcy schedules. The Defendants did not identify Cordova Catfish as a business owned by them in their Statement of Financial Affairs. [ECF No. 20, Ex. B].

On September 2, 2020, this second Chapter 13 case was also dismissed as the result of the Defendants' failure to provide required documents. [Case No. 20-23623, ECF No. 27].

Trial was scheduled in the Shelby County Circuit Court for June 23, 2022, but Defendants filed a third Chapter 13 bankruptcy petition on June 14, 2022, case number 22-22360. SCGV was not given notice of the filing of this petition nor was it identified as a creditor or party to an unexpired lease. The pending litigation was not identified in the Defendants' Statement of Financial Affairs even though the Defendants had filed a counter-complaint against SCGV. [ECF No. 1, ¶¶ 26-27; Case No. 22-22360, ECF No. 1].

Without notice of the pending Chapter 13 bankruptcy case, SCGV proceeded to trial against Cordova Catfish and the Defendants. SCGV eventually obtained a judgment against

Cordova Catfish and the Defendants for $184,966.88 plus costs. The judgment included $36,435.00 in attorney's fees incurred by SCGV in pursuing the litigation. The judgment was recorded on May 12, 2023. The defendants appealed the judgment to the Tennessee Court of Appeals, but the appeal was dismissed on May 1, 2024. At no time during the pendency of this appeal was the circuit court, court of appeals, or SCGV informed of the Defendants' pending bankruptcy case. [ECF No. 1, ¶ 32-34, 37; Proof of Claim 26-1, Ex. 2].

Finally, following the dismissal of their appeal, on May 24, 2024 Defendants filed a motion to add SCGV as a creditor in their Chapter 13 bankruptcy case—a case that had been pending since June 14, 2022. This was the first notice that SCGV had of the pending or prior bankruptcy cases. [ECF No. 1, ¶¶ 38-39].

On October 30, 2024, the Defendants converted their Chapter 13 case to Chapter 7. Brian M. Glass was appointed trustee. The Plaintiff filed the complaint commencing this adversary proceeding on March 14, 2025. Although the Defendants are represented by Joseph D. Fox in their bankruptcy case, Mr. Fox declined to appear on their behalf in this adversary proceeding.

Default was entered on June 30, 2025. The Defendants were given ample time to obtain counsel but failed to do so. The hearing to consider entry of judgment by default thus proceeded on October 9, 2025.

## ANALYSIS

A discharge in bankruptcy is intended to give the "honest but unfortunate debtor" a fresh start. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 659 (1991), quoting, *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1931). It is a privilege, not a right, and requires complete financial disclosure from the debtor. *Kenney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000). Having set forth the background facts that led to the filing of the Complaint, the Court will consider

5

in turn each of the Counts set forth in the complaint and facts specific to those Counts.

## Count I

Count I of the complaint asks that the discharge of SCGV's claim be denied under section 523(a)(2)(A) on the basis that the Defendants obtained money, property, or services from SCGV by actual fraud. Section 523(a)(2)(A) excepts from discharge under section 727 "any debt … for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement concerning the debtor's financial condition." 11 U.S.C. § 523(a)(2)(A). The Sixth Circuit Bankruptcy Appellate Panel has adopted guidance concerning the requirement of actual fraud provided by the Court of Appeals for the Seventh Circuit:

> [a]ctual fraud as used in 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions. When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code.

*Mellon Bank v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir.2001) (citing *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir.2000)). Further, the Appellate Panel has said,

> Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. It requires intent to deceive or defraud."

*In re Vitanovich*, 259 B.R. at 877 (quoting *Gerad v. Cole (In re Cole)*, 164 B.R. 951, 953 (Bankr. N.D. Ohio 1993)) (other quotation omitted). Further, "[a]ctual fraud has also been defined as 'deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed.'" *Helber v. Cline* (*In re Cline*), 639 B.R.

6

452, 462 (Bankr. S.D. Ohio 2022), quoting *Blascak v. Sprague (In re Sprague)*, 205 B. R. 851, 859 (Bankr. N.D. Ohio 1997).

SCGV alleges that the Defendants induced it to enter into the original Lease "with a party [Teddy's, Inc.], that could not be contractually bound, was incapable of performing under the contract, and against whose breach SCGV could not obtain compensation." SCGV alleges, and its statement is taken as true, that Teddy's, Inc. never came into existence despite the false representation of Defendant Jo Carol Harris that it was a Tennessee corporation.

SCGV cannot succeed on this theory, however, because after Teddy's (or Mrs. Harris) defaulted under the Lease, SCGV agreed that Cordova Catfish would be substituted as the tenant. This worked a novation, a new contract, between SCGV and Cordova Catfish, which according to SCGV was a member-managed limited liability company formed under Tennessee law prior to the amendment to the Lease. *See* ECF No. 1, ¶ 13. A novation is "the substitution of a new obligation for an existing debt or obligation, thereby extinguishing the latter." 30 *Williston on Contracts* § 76:1 (4th ed.). In other words, a novation is the creation of a new contract. The parties entered into a new contract when, with full knowledge of the failure of Teddy's to pay, SCGV agreed to accept Cordova Catfish as its tenant, and Cordova Catfish and the Defendants, as guarantors, agreed to be bound by the terms of the modified Lease.

SCGV also alleges that the Defendants committed actual fraud when they had available funds from the operation of their business for payment of rent in 2018 but intentionally withheld payment. To support this allegation, SCGV relies upon statement made by the Defendants in their 2019 bankruptcy filing that they earned gross income in 2018 of $1,000,000. It is true that the Defendants claim that they earned income from operation of an unspecified business in 2018 in the amount of $1,000,000. [Case No. 19-29206, ECF No. 1, Statement of Financial Affairs,

question 4]. SCGV concludes from this that the Defendants as guarantors never intended to pay and gave a false guaranty with the intention of deceiving SCGV.

Without more, the Court cannot conclude that the Defendants intended to deceive SCGV when they agreed to guarantee the obligations of Cordova Catfish under the amended Lease. A guaranty is a conditional undertaking, conditioned upon the failure of the principal obligor to perform. The complaint contains no allegations concerning the events that led to the filing of a Detainer Warrant by SCGV on February 6, 2020, other than facts related to the unauthorized sublease of the premises. SCGV states that the "Debtors collected rent from the third party, without remitting it to SCGV." [ECF No. 1, ¶ 15]. The complaint says nothing about the failure of Cordova Catfish to pay nor about any demand made upon the Defendants as guarantors to pay. The Court cannot conclude from these allegations that the Defendants never intended to honor their guaranties when they gave them.

Count I must be decided in favor of the Defendants.

### Count II

In Count II the Plaintiff alleges that the Defendants are not entitled to discharge pursuant to section 727(a)(2)(A) and (B) of the Bankruptcy Code as the result of their concealing property of the debtors within one year prior to the filing of their petition and concealing property of the estate within one year after the filing of the petition. Specifically, SCGV alleges that the Defendants are the owners of Cordova Waste, Inc. and its assets "but have intentionally and fraudulently concealed that ownership and the assets used or produced by that business." [ECF No. 1, ¶ 55].

With respect to Cordova Waste, Inc. the Complaint alleges:

> On June 18, 2020, a Tennessee corporation known as Cordova Waste, Inc. was incorporated with James King, Attorney, serving as Incorporator—the same Mr.

8

> King who served as Registered agent for Cordova Catfish Place & More, LLC, Debtors' closely-held company, which is a co-debtor of Debtors in regard to the debt owed to SCGV. In Debtors' Case No. 19-29206, Debtors listed James King as attorney in two outstanding breach of contract actions filed on their or their company's behalf. The address of the principal office of Cordova Waste, Inc. on East Raines Road is a residential property that is next-door to one of the principal office addresses for J & J Waste Inc.

[ECF No. 1, ¶ 19]. Even if these facts are true, and the Court accepts that they are, they fall short of demonstrating what SCGV would have the Court conclude—that Cordova Waste, Inc. is owned by the Defendants. The Declaration of the Trustee is silent as to this potential asset. If there were evidence to support the Defendants' ownership of this corporation, the Court would expect the Trustee to pursue mention it. SCGV has failed to show that the Defendants are the owners of Cordova Waste, Inc., and thus has failed to show that the Defendants concealed this asset.

Count II must be decided in favor of the Defendants.

### Count III

In Count III SCGV alleges that the Defendants are "the de facto and equitable owners of Cordova Waste, Inc. and concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers related to Cordova Waste, Inc., from which Debtors' financial condition or business transactions might be ascertained." Thus, they allege that the Defendants' discharge should be denied pursuant to section 727(a)(3) of the Bankruptcy Code. [ECF No.1, ¶ 60].

This count must fail for the same reason that Count II failed. SCGV has not established that the Defendants are the owners of Cordova Waste, Inc. The Trustee's declaration makes no mention of this company or of attempts to question the Defendants about it. Without more, the Court cannot find that the Defendants ever had records concerning Cordova Waste, Inc., much less that they destroyed them.

Count III must be decided in favor of the Defendants.

### Count IV

Count IV of the Complaint alleges that the Debtors knowingly and fraudulently made a false oath in connection with their bankruptcy case and thus are not entitled to discharge pursuant to section 727(a)(4) of the Bankruptcy Code. This is a much more serious allegation. SCGV has demonstrated beyond any doubt that the Defendants knew about the pendency of litigation by and against SCGV at the time they filed their pending 2022 bankruptcy petition which was not included in Schedule A/B as a claim against a third party nor in response to question 9 of the Statement of Financial Affairs. The Defendants knew that they were guarantors of an obligation owed to SCGV at the time they filed their bankruptcy petition, yet they failed to disclose this obligation on Schedule E/F. The Defendants knew at the time they filed their bankruptcy petition that they had guaranteed the obligation of Cordova Catfish owed to SCGV, yet they failed to disclose Cordova Catfish as a co-debtor on Schedule H. The Defendants knew that they had interests in at least two businesses within the four years preceding the filing of their petition on June 14, 2022, Cordova Catfish (which appears to have been operated until January 2020, when Defendant Jo Carol Harris assigned the Lease to a third party) and J & J Waste, Inc. (disclosed in their 2020 Chapter 13 filing as having been operated between 2003 and March 2019), but did not disclose these businesses at question 27 of their Statement of Financial Affairs.

The Defendants had an opportunity to correct the false statements made in their original Schedules and Statements when they converted their case to Chapter 7. After conversion, new Schedules and Statements were filed by the Defendants on November 6, 2024. [Case No. 22-22360, ECF No. 123]. Other than listing SCGV as an unsecured creditor in Schedule E/F, they failed to correct any of the other omissions. They failed to include their counterclaim against

10

SCGV as a claim against another in Schedule A/B (although by that time, final judgment had been entered in the litigation with SCGV); they failed to identify Cordova Catfish as a co-debtor in Schedule H; they failed to identify the litigation with SCGV and failed to identify Cordova Catfish and J & J Waste, Inc. as businesses in which they held an interest in the Statement of Financial Affairs.

To prevail on a complaint to deny a debtor a discharge based on his "false oath(s)," the plaintiff must prove by a preponderance of evidence the following that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir.2000); 11 U.S.C. § 727(a)(4)(A).

> The very purpose of ... 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to ensure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction ... Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

*Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999).

"A debtor has a paramount duty to consider all questions posed on a statement or schedule carefully and see that the question is answered completely in all respects." *Larocco v. Smithers, (In re Smithers)*, 342 B.R. 384, *3 (B.A.P. 6th Cir. 2006). Representations in a debtor's bankruptcy statements and schedules, both of which are executed under penalty of perjury, can constitute false oaths within the meaning of the discharge exception, as can statements and testimony given by a debtor at the Bankruptcy Code section 341 meeting of creditors. *Roberts v. Oliver (In Re Oliver)*, 414 B.R. 361, 374 (Bankr. E.D. Tenn. 2009).

A debtor's knowledge that a statement is false "can be evidenced by demonstrating that a debtor "knew the truth but nonetheless failed to give the information or gave contradictory information." *Keeney* at 685-86, citing, *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). Intent to defraud "involves a material misrepresentation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *Id.* The intent requirement may also be satisfied by a reckless disregard as to whether a representation is true. The subject of a false oath is "material," for purposes of § 727(a)(4)(A), if it bears a relationship to the debtor's business transactions or estate, or concerns discovery of assets, business dealings, or existence and disposition of debtor's property. *Keeney* at 686, quoting, *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992). It does not matter whether a significant amount of money is involved. Neither does it mahtter that the debtor does not intend to injure his creditors when he makes a false statement. Creditors are intended to judge for themselves what will benefit and what will prejudice them. *Hamo* at 725, citing, *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cit. 1984).

"The court may deduce fraudulent intent from all the facts and circumstances of a case." *Keeney* at 686. The use of circumstantial evidence is normally a must. Indeed, "in using circumstantial evidence, there will often exist numerous evidentiary indicators, each of which alone would not establish fraud but when viewed collectively, form a trail leading firmly in the direction of fraudulent intent. . . . An always important consideration in any analysis under § 727(a)(4)(A) is whether there exist a series or patterns of errors and emissions." *U.S. Trustee v. Halishak (In re Halishak)*, 337 B.R. 620, 627 (Bankr. N.D. Ohio 2005). A continuing pattern of omissions or false statements in a debtor's bankruptcy schedules exhibits a reckless indifference for the truth. *Hamo* at 725; *Roberts v. Montgomery (In re Montgomery)*, 2007 WL 625196, *4

12

(Bankr. E.D. Tenn. 2007). Moreover, "where a debtor only voluntarily discloses information after its existence is uncovered by a third party, (e. g., a trustee or creditor), good faith is unlikely to be found." *Halishak* at 630.

The Defendants have filed three bankruptcy petitions and completed their schedules and statements four times. The fact that they failed to notify SCGV of the filing of their bankruptcy cases until they felt compelled to seek relief from the bankruptcy court after entry of the large judgment against them indicates a lack of good faith in pursuing bankruptcy relief. When they signed their schedules and statement of financial affairs, the Defendants affirmed under penalty of perjury that they had read them, and that the information disclosed in them was true and correct. These statements, made under oath, were false. Given the opportunity to correct their false statements, the Defendants failed to do so. At a minimum, the Defendants have exhibited a reckless disregard for the truth.

Thus, the Court concludes that Count IV must be decided in favor of the Plaintiff. The Defendants are not entitled to discharge as the result of their false oaths.

## CONCLUSION

Judgment by default will be entered for the Plaintiff SCGV Dexter Ridge, LLC against the Defendants, Theodore E. Harris, Jr., and Jo Carol Harris, as to Count IV of the Complaint only. The discharge of the debts of the Defendants is DENIED.

Judgment will be entered for the Defendants against the Plaintiff as to Counts I, II, and III of the Complaint.

cc:  Debtors/Defendants
     Attorney for Debtors/Defendants (if any)
     Plaintiff
     Attorney for Plaintiff
     Chapter 7 Trustee
     United States Trustee

13